IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AUGUSTUS MCGOWAN,

    Plaintiff,

vs.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,[1]

    Defendant.

Civil Action No. ADC-17-3343

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

On November 10, 2017, Augustus McGowan ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 17, 18), and the response thereto (ECF No. 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 18) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On April 28, 2011, Plaintiff filed a Title II application for DIB, alleging disability beginning on January 1, 2011. Plaintiff also filed a Title XVI application for SSI on June 14,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

2011, alleging disability beginning on January 1, 2011. His claims were denied initially and upon reconsideration on November 2, 2011 and December 28, 2012, respectively. Subsequently, on February 2, 2013, Plaintiff filed a written request for a hearing and, on July 30, 2014, an Administrative Law Judge ("ALJ") presided over a hearing. On October 24, 2014, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from January 1, 2011, through [October 24, 2014,] the date of this decision." ECF No. 11-3 at 49. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on April 13, 2016, the Appeals Council denied Plaintiff's request for review. On May 26, 2016, Plaintiff filed his first action for judicial review in this Court (Civil Action No. SAG-16-1648). The parties filed a consent motion for remand on July 15, 2016, and the Court granted the motion the same day, remanding the case for further administrative action.

On June 29, 2017, the Appeals Council notified Plaintiff of its intent to issue a decision finding that Plaintiff was not entitled to or eligible for DIB or SSI under the Act based on the written record before the ALJ and additional evidence not considered at the review level. *Id.* at 14–18. On September 28, 2017, the Appeals Council issued a final written decision, ruling that Plaintiff "[wa]s not disabled as defined in the [Act] at any time from January 1, 2011 through October 24, 2014." *Id.* at 10. Thus, this decision became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On November 10, 2017, Plaintiff filed the instant action in this Court seeking judicial review of the SSA's denial of his disability application. On July 3, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on September 4,

2018. On September 13, 2018, Plaintiff responded to Defendant's motion.[2] This matter is now fully briefed and the Court has reviewed both parties' motions and the response thereto.

**STANDARD OF REVIEW**

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a

---

[2] On October 4, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

3

preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that he is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632,

634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's

ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p, 1996 WL 374186, at *1–9 (July 2, 1996).[3] To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *5.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

[3] Effective March 28, 2016, SSR 96-7P was rescinded and superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p requires a federal court reviewing an SSA decision to apply the same rules in effect at the time the decision was issued. SSR 16-3p, 2017 WL 5180304, at *1. Because the ALJ decision currently under review was issued on October 24, 2014, the Court will conduct its review using SSR 96-7p. However, the Court notes that SSR 16-3p is applicable upon remand. *Id.* ("If a court remands a claim for further proceedings after the applicable date of the ruling (March 28, 2016), we will apply SSR 16-3p to the entire period in the decision we make after the court's remand.") (emphasis omitted).

If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION[4]

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff "ha[d] engaged in substantial gainful activity since January 1, 2011, the alleged onset date," but noted that Plaintiff's work activity and earnings from 2012 on did not meet the statutory requirements for substantial gainful activity. ECF No. 11-3 at 41. On remand, the Appeals Council found that Plaintiff "engaged in substantial gainful activity in 2011. However, he did not engage in substantial gainful activity from January 1, 2012 through October 24, 2014." *Id.* at 9. At step two, the ALJ found that Plaintiff had the severe impairments of

---

[4] Unless otherwise indicated, the Appeals Council adopted the following findings made by the ALJ.

7

"Ischemic Heart Disease and Prostate Cancer." *Id.* at 41. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 43. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can perform no climbing of ropes, ladders or scaffolds; frequent climbing of stairs or ramps; frequent stooping, crouching, crawling and kneeling; no exposure to hazards such as unprotected heights; and use of an assistive device for prolonged ambulation.

*Id.* The ALJ then determined that Plaintiff had past relevant work as a geriatric nursing assistant and a janitor, but that he was unable to perform such work. *Id.* at 48. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 49. Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from January 1, 2011, through [October 24, 2014,] the date of this decision." *Id.*

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ improperly conducted a "backwards analysis" by determining Plaintiff's RFC before assessing Plaintiff's credibility; (2) that the ALJ failed to properly evaluate or consider Plaintiff's obesity; and (3) that substantial evidence did not support the ALJ's step three determination. The Court agrees with Plaintiff's second and third arguments, but Plaintiff's first argument lacks merit. Each alleged error is addressed below.

### A. The ALJ Properly Evaluated Plaintiff's Credibility During Step Four Of The Sequential Evaluation.

Plaintiff first argues that the ALJ erred by failing to comply with the decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), when she used boilerplate language rejected by the *Mascio* Court. ECF No. 17-1 at 10–11. According to Plaintiff, the use of the boilerplate language evidences that the ALJ improperly conducted a "backwards analysis" by determining Plaintiff's RFC before assessing his credibility. *Id.*

In *Mascio*, the Court of Appeals for the Fourth Circuit remanded the case for further explanation, reasoning that the boilerplate language the ALJ used to explain his credibility analysis "'g[ot] things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). The ALJ's language at issue in *Mascio* stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.* (citation omitted). The Fourth Circuit found that this boilerplate conflicts with the SSA's own regulations and rulings, both of which require an ALJ to compare the claimant's subjective statements with other evidence in the record, rather than with the RFC. *Id.* However, the Court explained that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Id.* Thus, there is no error where an ALJ "articulate[s] which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Armani v. Comm'r, Soc. Sec. Admin.*, No. JMC-14-cv-976, 2015 WL 2062183, at *1 (D.Md. May 1, 2015).

9

During her step four analysis, the ALJ in the instant case stated:

> After careful consideration [of] all medical opinions; prior work record; daily activities; the location, duration, frequency and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, and side effects of medication; treatment other than medication; and other measures used to relieve [Plaintiff]'s symptoms, I find that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent they are inconsistent with the above residual functional capacity.

ECF No. 11-3 at 44. Despite her use of the boilerplate language disapproved of in *Mascio*, the ALJ's error was harmless in light of the thorough discussion she subsequently engaged in, in which she analyzed Plaintiff's subjective complaints, hearing testimony, daily activities, and the objective medical evidence in the record. *Id.* at 45–48. The ALJ's discussion following the boilerplate language provided in relevant part:

> After testifying for the bulk of the hearing, [Plaintiff] appeared to have an episode and had to leave the hearing room. When [Plaintiff] returned, [his] representative insisted that he explain what happened. [Plaintiff] alleged that he had to take a Nitro because of pressure build-up and sharp pain that traveled down through his arm.
>
> [Plaintiff] previously completed an Adult Function Report, received on July 12, 2011 (but incorrectly dated), reporting that when he wakes up, he exercises on the bike, walks, takes his medication and eats breakfast, and then cleans before resting. [Plaintiff] can prepare full meals sometimes, perform all inside household chores, takes out the trash, shops in stores, can handle his finances, is very active in his church ushering and with outreach programs. [Plaintiff] also reported that he visits the sick and shut-in when he is not sick.
>
> On June 23, 2014, [Plaintiff] prepared a written statement alleging 100% disability due to pain, abdominal discomfort, fatigue, inability to breathe, decreased energy, [and] limitations with daily functioning. Third party correspondence was also submitted on [Plaintiff]'s behalf alleging that [Plaintiff] suffered high blood

pressure readings and chest pain, which resolved, while at work. Despite [Plaintiff]'s allegations of worsening and the nurse's blood pressure reading and recommendations contained in the third-party correspondence[,] . . . he continues to work thus diminishing his credibility. As articulated above and supported by the medical evidence of record, [Plaintiff] is able to [perform] light work with some limitations. [Plaintiff]'s statement otherwise is not credible as he continues to perform work related functions as a [geriatric nursing assistant], that most likely exceeds light work, daily activities, including assisting in church regularly, and taking care of his personal needs and care.

In addition, [Plaintiff]'s allegations are not supported by the medical evidence of record. Treatment records dated March 2010 from Arundel Heart Associates show that [Plaintiff]'s chest pain is secondary to his chest wall pain, but he is advised to get his blood pressure down before addressing removal of sternal wires. [Plaintiff] underwent surgery to remove the sternal wire on a suspicion that it may be causing [Plaintiff]'s chest pain, but [Plaintiff] was readmitted into hospital again after alleging just sitting watching television. [Plaintiff] presented to and was admitted to Baltimore Washington Medical Center on February 12, 2011 after alleging that he was just sitting watching television with his girlfriend when he had a sharp chest pain, so he presented to the emergency room. Upon examination, he appeared quite comfortable with no evidence of infection or inflammation. He reported a history of pain syndrome following a coronary bypass grafting in 2008 and had 12 catheterizations throughout his life. His last one [was] in May 2010 due to recurrent chest pain.

*Id.* at 45 (internal record citations omitted). The ALJ's discussion continued on to provide a thorough discussion of the objective medical evidence before concluding that Plaintiff's "[RFC] to perform light work with additional limitations as outlined above is supported by the record as a whole." *Id.* at 48.

The ALJ's credibility analysis in the instant case stands in stark contrast to the analyses deemed insufficient in *Mascio* and *Armani*. In those cases, the ALJs merely relied on the rejected boilerplate language and failed to articulate which of the claimants' statements were credited or discredited. *Mascio*, 780 F.3d at 640 ("Nowhere, however, does the ALJ explain how

he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's [RFC]."); *Armani*, 2015 WL 2062183, at *2 ("It is clear that the ALJ found both [plaintiff] and her mother to be credible to some extent, but I cannot ascertain which of their statements the ALJ believed, and which he discredited."). In contrast, here the ALJ specifically identified several of Plaintiff's statements, analyzed the statements in conjunction with Plaintiff's testimony, daily activities, and objective medical evidence, and provided sufficient explanation for why Plaintiff's statements were discredited. ECF No. 11-3 at 45–48. Consequently, the Court finds that the ALJ's use of the boilerplate language rejected in *Mascio* was harmless error in light of the thorough credibility analysis she subsequently engaged in. Furthermore, the Court finds that the ALJ's credibility analysis was fully articulated in the written decision and supported by good reasons and substantial evidence in the record.

### B. The ALJ Failed To Consider Plaintiff's Obesity As A Severe Impairment Or In Combination With Plaintiff's Other Impairments.

Plaintiff next argues that the ALJ and the Appeals Council failed to comply with SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002), by neglecting to consider Plaintiff's obesity as a severe impairment at step two of the sequential evaluation or the effect of Plaintiff's obesity on other impairments at step three. ECF No. 17-1 at 11–15.

SSR 02-1p provides guidance on how to evaluate obesity in each sequential step of the evaluation. SSR 02-1p, 2002 WL 34686281, at *3–7. In evaluating step two, the ruling provides that "obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. However, "the standard for a finding of severity is quite low: 'an impairment(s) is "not severe" only if it is a slight abnormality (or a

combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities.'" *Stemple v. Astrue*, 475 F.Supp.2d 527, 539 (D.Md. 2007) (quoting SSR 02-1p, 2002 WL 34686281, at *4). "There is no specific level of weight or [body mass index (BMI)] that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity . . . establish whether obesity is or is not a 'severe' impairment for disability program purposes." SSR 02-1p, 2002 WL 34686281, at *4. Instead, the ALJ is required to "do an individualized assessment of the impact of obesity on an individual's functioning." *Id.* Additionally, in evaluating step three, an ALJ must also consider the effects of obesity on other impairments as "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a [L]isting." *Id.* at *5. "This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." *Id.*

Remand is appropriate where an ALJ fails to mention a claimant's obesity, fails to explain why he or she did not consider obesity as an impairment, and fails to consider obesity at subsequent steps. *E.g., Janice B. v. Comm'r, Soc. Sec. Admin.*, No. BPG-17-2456, 2018 WL 5620567, at *1 (D.Md. Oct. 30, 2018) (ordering remand where the ALJ failed to acknowledge plaintiff's obesity); *Stemple*, 475 F.Supp.2d at 538–41 (ordering remand where the ALJ failed to acknowledge plaintiff's obesity and failed to consider its effect on other impairments); *Boston v. Barnhart*, 332 F.Supp.2d 879, 885–86 (D.Md. 2004) (ordering remand where there was "clear evidence" of plaintiff's obesity, yet "the ALJ failed to make a determination as to whether the plaintiff's obesity alone was a severe impairment, and the effects the plaintiff's obesity had on his other impairments" and "failed to mention the plaintiff's obesity at all in her determination of his RFC").

Here, the ALJ made no mention of obesity anywhere in her opinion, despite evidence in the record indicating that Plaintiff was obese according to SSR 02-1p and that he had spinal impairments, as discussed further below. SSR 02-1p "does not provide precise height and weight requirements for obesity." *Boston*, 332 F.Supp.2d at 886. Citing guidelines from the National Institutes of Health, the ruling states:

> These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters . . . . For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as "overweight" and a BMI of 30.0 or above as "obesity."

SSR 02-1p, 2002 WL 34686281, at *2. Although there was no clear diagnosis of obesity during the relevant time period,[5] physical examination records from two physicians, Dr. Paul Young-Hyman and Dr. Ratnakar Mukherjee, in 2012 and 2013 identify Plaintiff as "obese." ECF No. 11-8 at 452, 501. Furthermore, the medical evidence in the record pertaining to the relevant time period indicates that Plaintiff's weight ranged from about 201 pounds to 211 pounds. ECF No. 11-9 at 4; ECF No. 11-10 at 19. His height ranged between 64 and 66 inches during the same time period. ECF No. 11-9 at 4, 245; ECF No. 11-10 at 25, 60. These measurements resulted in Plaintiff's BMI ranging from 32 to 35.18, well over the "obesity" index. ECF No. 11-9 at 406; ECF No. 11-10 at 60. Thus, according to the guidelines provided in SSR 02-1p, there was clear evidence of Plaintiff's obesity, and the ALJ's failure to acknowledge and consider the effects of Plaintiff's obesity warrants remand.

---

[5] According to a hospital record dated December 9, 2009, Plaintiff was diagnosed with "obesity NOS [(not otherwise specified)]." ECF No. 11-8 at 3.

## C. The ALJ's Step Three Determination Is Not Supported By Substantial Evidence.

Plaintiff's final argument stems in part from his second argument relating to the ALJ's failure to consider his obesity. He contends that the ALJ's failure to evaluate obesity at step two led to the ALJ's failure to consider its effects on Plaintiff's musculoskeletal impairments, which in turn resulted in the ALJ's failure to evaluate whether Plaintiff's spinal impairments met or medically equaled Listing 1.04A. ECF No. 17-1 at 15–20.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that his condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that he is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, "are conclusive on the issue of disability"). The burden of proof is on the claimant to show that he meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that

impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Remand is appropriate where an ALJ fails to identify or evaluate a particular Listing when the claimant presents evidence in support of that Listing. *Fox v. Colvin*, 632 F.App'x 750, 755 (4th Cir. 2015) (ordering remand where the ALJ failed to apply the requirements of Listing 1.04A to the inconsistent record evidence); *Radford*, 734 F.3d at 295 (ordering remand where the ALJ's step three analysis "regarding the applicability of Listing 1.04A [wa]s devoid of reasoning" despite "a fair amount of evidence" supporting the Listing); *Weems v. Comm'r of Soc. Sec.*, No. SAG-12-2993, 2013 WL 4784124, at *2 (D.Md. Sept. 5, 2013) (ordering remand where plaintiff presented "[m]any of the criteria set forth in Listing 1.04A," but the ALJ neither identified nor discussed the Listing).

Listing 1.04A states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.04A.

During her step three analysis, the ALJ provided the following discussion:

> The State physicians, who are skilled and experienced in reviewing records and assessing the impairments and limitations that are documented in those records, concluded that [Plaintiff]'s impairments did not meet or equal the requirements of any section of Appendix 1. The records that have been submitted since the DDS completed its review do not warrant a different determination at the third step of the evaluation process. No treating or examining physician has identified any medically acceptable clinical or laboratory diagnostic techniques that support any medical signs or findings that meet or medically equal the requirements of any section of Appendix 1. I have reviewed the records and for the reasons stated below finds [sic] that the medical evidence of record does not establish that any of [Plaintiff]'s severe impairments meets or equals the requirements of any of the listing of impairments herein.

ECF No. 11-3 at 43. The ALJ also briefly addressed Listing 4.04, Ischemic Heart Disease, before concluding that Plaintiff's impairments did not meet or medically equal the Listing. *Id.*

Here, the ALJ failed to identify Listing 1.04A and neglected to discuss whether Plaintiff's impairments met or equaled the Listing criteria, despite evidence in the medical record supporting the Listing. Review of the medical record demonstrates that Plaintiff was diagnosed with several of the spine disorders addressed in the introductory paragraph of Listing 1.04 and that several of the Listing 1.04A criteria were present during the relevant time period. In particular, in 2011, Plaintiff was diagnosed with lumbar radiculopathy, ECF No. 11-8 at 316, and had suspected compression of the accessory nerve controlling the deltoid muscle, ECF No. 11-8 at 257. In 2012, MRI testing showed that Plaintiff had "facet osteoarthritis' in his spine at L3-4, L4-5, and L5-S1. ECF No. 11-9 at 66. In a Physical Residual Functional Capacity Questionnaire from March 2013, Plaintiff's treating physician, Dr. Raphael Dodoo, listed spinal stenosis as a diagnosis. ECF No. 11-8 at 402. Each of these diagnoses meets the introductory

requirements for Listing 1.04. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 1.04. Additionally, the record demonstrates several of the Listing 1.04A criteria, including neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. ECF No. 11-8 at 256–57, 316–17, 389, 394–95; ECF No. 11-9 at 131, 137, 170.

Defendant correctly notes that there are inconsistencies in the record, including evidence showing that Plaintiff had only "minimal narrowing of the spinal canal," with "no disc herniation, high-grade spinal canal stenosis, or acute finding of any level of the lumbar spine." ECF No. 11-9 at 66. In light of these inconsistencies, the ALJ should have identified Listing 1.04A and applied its requirements to the record evidence, but instead she merely provided a conclusory analysis deemed unacceptable in *Radford* and *Fox*, with no explanation other than noting the state physicians' conclusion that Plaintiff's impairments did not meet any Listing. ECF No. 11-3 at 43; *see Fox*, 632 F.App'x at 754–55 (rejecting the ALJ's step three analysis in which he did not apply findings to the Listings and relied only upon the conclusions of physicians); *Radford*, 734 F.3d at 295 (finding the ALJ's step three analysis "devoid of reasoning" because it relied only upon the conclusions of state physicians). As in *Radford*, "[a] full explanation by the ALJ is particularly important in this case because [Plaintiff]'s medical record includes a fair amount of evidence supportive of his claim." 734 F.3d at 295. The ALJ's failure to identify Listing 1.04A or adequately explain her reasoning precludes the Court from undertaking "meaningful review" of the finding that Plaintiff did not meet the Listing. *Id.* at 296. Accordingly, the Court must remand the case to the SSA for further analysis consistent with *Radford*.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from January 1, 2011 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 13 November 2018

A. David Copperthite
United States Magistrate Judge